## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **DIOGU KALU DIOGU II. LLM, AND DIOGU KALU DIOGU II. LLM NEXT FRIENDS OF HIS MINOR CHIDREN DKDIII, AND NMKD PLAINTIFFS** | **CASE NO: 4:24-CV-03590** |

**VS.**

**HON. KP GEORGE,** Individually And In His Official Capacity As Fort Bend County Judge; **CHARLES G NORVELL,** Individually And In His Official Capacity As The Fort Bend County Constable Precinct 1, **JAMES A. ELECKEL,** Individually And In His Official Capacity As A Deputy, Fort Bend County Constable Precinct 1; **JOHN D MELANCON,** Individually And In His Official Capacity As A Deputy, Fort Bend County Constable Precinct 1; **JOHN/JANE DOE 1-10,** Individually And In His Official Capacity As Unknown Deputies, Fort Bend County Constable Precinct 1; AND **SOUTHWEST INTERNATIONAL TRUCKS, INC.,** A Delaware Company; **JOHN/JANE DOES, 11-20,**

**DEFENDANTS**

United States Courts
Southern District of Texas
F I L E D

OCT 0 7 2024

Nathan Ochsner, Clerk of Court

**JUDGE CHARLES ESKRIDGE**

**JURY DEMANDED**

## THE SECOND AMENDED VERIFIED ORIGINAL COMPLAINT AND APPLICATION OF TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

**TO THE HONORABLE US DISTRICT COURT:**

**PLAINTIFFS** files this verified Second amended original complaint. **ALLEGES AS FOLLOWS**: This is a complaint for damages based upon federal civil rights and state law violations committed by the Defendants, ***Hon. KP George***, individually and in His Official Capacity As Fort Bend County Judge; **Charles G Norvell**, Individually

And In His Official Capacity As The Fort Bend County Constable Precinct 1, James A. Eleckel, Individually And In His Official Capacity As A Deputy, Fort Bend County Constable Precinct 1; **John D Melancon**, Individually And In His Official Capacity As A Deputy, Fort Bend County Constable Precinct 1; **John/Jane Doe 1-10**, Individually And In His Official Capacity As Unknown Deputies, Fort Bend County Constable Precinct 1; AND *Southwest International Trucks, Inc.*, A Delaware Company; *John/Jane Does*, 11-20, being the *County of Fort Bend. Fort Bend County Precinct* 1, and its respective uniform Deputies, including peace officers, employees, and agents who participated in violation of the Plaintiffs' protections as guaranteed under the Fourth Amendment et al, beginning on July 2nd, 2024, and thereafter. This case is brought under 42 U.S.C. §§ 1983, 1985(3),1988, and Texas state law. Federal jurisdiction is based upon 28 U.S.C. §§ 1331,1343 (a)(l-4). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a)

Defendants are liable jointly, severally, and in solido for the intentional, excessive, and otherwise unconstitutional and tortious conduct set forth below.

## NATURE OF ACTION

1. On July 2nd, 2024, Plaintiff Diogu Kalu Diogu II., a 65-year-old Black man, left his residence at 4726 Gainsborough Drive, Brookshire, Texas 77423 to do groceries for his family. The Plaintiff is informed and believes that as he drove towards the stop sign, of Hunts Road and FM 529, four vehicles belonging to Fort Bend County, Precinct 1, rushed towards his car, with light flashing and sirens blazing. He stopped, and opened his driver's side door, as commanded he calmly followed all the Deputies' commands, the Deputies assaulted him causing bleeding from his elbow arrested him, handcuffed him, and severely injured him in the process. The arresting officers callously ignored the

2

fact that Diogu followed all instructions and commands, and pleas to handcuff him from the front rather than the back to avoid exacerbating his chronic sciatica. The force of the behind-the-back handcuffing caused Mr. Diogu to bleed profusely on his elbow and his wrist. Because the handcuff was so tight it pinched his wrist and other blood vessels causing him to bleed. The injuries had an immediate and profound effect on his life, leaving him in persistent debilitating pain and unable to engage in basic household chores for days. After he was placed in the Deputy's car even though he was again pleading to the arresting officer, that the handcuff was too tight and that he was in pain, they left him there bleeding and in pain for over 25 minutes.

2.   Though the facts here may seem less extreme in comparison to some of the incidents of Deputies brutality against Black males, that dominate the airwaves, this case is no less a "knee on the neck of justice for Black Americans."[1] Mr. Diogu was unarmed; fully cooperative at all times; and posed no threat or flight risk whatsoever. He did absolutely nothing wrong. Nonetheless, and for no justifiable reason, the arresting officer, John D Melancon, and another Deputy, John Doe 1-10 intentionally handcuffed Mr. Diogu in a manner that he had specifically been told would cause unnecessary injury. Plaintiff is informed and believes that Defendants John D Melancon, James A. Eleckel, and John Doe 1-10 then kept Mr. Diogu handcuffed in that position—all the while forcing him to endure excruciating pain—for approximately 25 minutes.

3.   This conduct is repugnant to basic notions of human dignity, not to mention violating Mr. Diogu's constitutional rights. The banality of the Deputies' interaction

---

[1] Transcript of President Joe Biden addressing the nation on April 20, 2021, available at https://www.nytimes.com/2021/04/20/us/politics/biden-harris-chauvin-verdict-transcript.html.

here— gratuitous abuse during routine handcuffing—only highlights the urgency of holding law enforcement accountable in this case. There was no "tense, uncertain, and rapidly evolving situation" in which the officer had to make a "split-second judgment" about how much force to use.[2] If law enforcement cannot resist using excessive force against a Black man when circumstances are safe and easy, the situation is virtually certain to turn tragic when the call is more difficult. On the day Mr. Diogu was arrested, the law was clear that handcuffing a non-threatening, non-fleeing suspect from the back rather than the front constitutes excessive force when the arresting officer knows of a medical condition that could be aggravated by a behind-the-back handcuffing. Yet James A. Eleckel, John D Melancon, and John Doe 1-10 did it anyway, as other deputies stood by watching him violate Mr. Diogu's constitutional rights, doing nothing to stop him.

4.   The County of Forty Bend (the "County") which employs these officers should also be held accountable for its failure to train and supervise them concerning a procedure as routine and frequent as the arrest of a person with a medical condition in non-exigent circumstances—a situation the County could fully expect its officers to encounter numerous times throughout their careers. Yet this failure is no wonder, given the County's track record of failing to discipline its officers when they use excessive force against Black men—including, in a haunting echo of the George Floyd murder, when an officer's "heavy leather tactical boot was on [a victim's] neck."[3]

---

[2] Graham v. Connor, 490 U.S. 386, 397 (1989)

[3] See, e.g., Chris Nakamoto, Report says officers' actions were excessive force, borderline criminal, August 11, 2020, https://www.wbrz.com/news/investigative-unit-report-says-officers-actions-were-excessive-force-borderlinecriminal/; Hoang Tran, Man alleges he was a victim of police brutality, February 23, 2016, https://louisianarecord.com/stories/510668193-man-alleges-he-was-a-victim-of-police-brutality.

5.  The unnecessary and abusive use of force in this case, the indifference with which the dignity and basic medical needs of a Black citizen were disregarded,[4] and the County's deliberate failure to train, supervise, and discipline such conduct reinforces a history of distrust between the Deputies and the communities they serve and protect.[5] This leaves citizens—especially people of color like Mr. Diogu—fearful of seeking assistance from the Deputies, even when they are the wrong party.[6] Accountability is necessary to restore this trust. Excessive force is no less unconstitutional when it results from abusive handcuffing as opposed to the end of a pistol or a knee to the neck. A Black man in America should not have to die before justice can be served.

6.  Plaintiff is informed and believes that Defendants, James A. Eleckel, John D Melancon, John Doe 1-10, and the bystander officers who failed to intervene should be held jointly and severally liable for using excessive force on Mr. Diogu. So too should Fort Bend County be held liable for failing to train, supervise, and discipline its officers

---

[4] See, e.g., Elyse Wanshel, Police Violence Against Black Disabled People Can't Be Ignored Anymore, Huffington Post, Jul. 23, 2020, https://diversity.ucsd.edu/_files/21-Day%20AntiRacism%20Challenge%20Files/Police%20Violence%20Against%20Black%20Disabled%20People%20Cant%20Be %20Ignored.pdf; Nick Winges-Yanez, Black Disabled Americans Continue to Face Higher Rates of Police Violence, The Hill, Aug. 17, 2020, https://thehill.com/opinion/civil-rights/512370-black-disabled-americanscontinue-to-face-higher-rates-of-police.

[5] See, e.g., Cassandra Chaney & Ray V. Robertson, Racism and Police Brutality in America, 17 J. Afr. Am. St. 480 (2013); Jocelyn R. Smith Lee, et al., "That's My Number One Fear in Life. It's the Police": Examining Young Black Men's Exposures to Trauma and Loss Resulting From Police Violence and Police Killings, 45 J. of Black Psychology 143 (2019); Marlese Durr, What is the Difference between Slave Patrols and Modern Day Policing? Institutional Violence in a Community of Color, 41 Critical Sociology 873 (2015); Rod K. Brunson, "Police Don't Like Black People": African-American Young Men's Accumulated Police Experiences, 6 Criminology & Public Policy 71 (2007).

[6] See, e.g., Nikole Hannah-Jones, Yes, Black America Fears the Police. Here's Why, ProPublica, Mar. 4, 2015, https://www.propublica.org/article/yes-black-america-fears-the-police-heres-why; Rick Jervis, Who are police protecting and serving? Law enforcement has history of violence against many minority groups, USA Today, Jun. 13, 2020, https://www.usatoday.com/story/news/nation/2020/06/13/mistrust-police-minority-communities-hesitantcall-police-george-floyd/5347878002/; Dawn Butler, Black people should not be scared to phone the police when they need help – but I was, MetroUK, Aug. 8, 2020, https://metro.co.uk/2020/08/08/black-people-should-not-be-scaredphone-police-when-need-help-13098631/.

in their use of excessive force and on matters relating to search and seizure as protected by the Fourth Amendment of the US Constitution.

**A. WITHOUT AUTHORITY THE DEFENDANTS' DEPUTIES 1-10, DROVE TO THE PLAINTIFF'S RESIDENCE SEARCHED IT, KICKED HIS KIDS OUT, AND CONFISCATED IT**

7. On or about July 2nd, 2024, contemporaneously, with arrest, these officers immediately after the officer went to a property owned by and belonging to Advanced Technology Transfer And Intellectual Property Group (ATTIP Group) LLC, (Trustee) Of Minor Children DKKDIII AND NMKD, a Resident located at 4726 Gainsborough Drive, seized Diogu's personal property, ordered Diogu's minor Children, the owners of the house to the Street, while their dad was in jail on trumped charges, essentially to the street, sent his 2 Great Pyrenees puppies to the Fort bend County animal shelter for slaughter.

**B. WITHOUT AUTHORITY THE DEFENDANTS' DEPUTIES 1-10, AND SOUTHWEST INTERNATIONAL TRUCKS, INC., DESTROYED AND CONFISCATED DIOGU'S PERSONAL PROPERTY INCLUDING ALL HIS BUSINESS COMPUTERS, PRINTERS**

8. On or about July 2nd, 2024, the Fort Bend County Defendants and Defendant Southwest International Trucks, Inc., agreed to load, remove, and/or seize all the earthly belongings and dump them on the street in furtherance of the violation of the plaintiff's constitutional rights. *See attached USB.*

9. Plaintiff is informed and believes that Defendants, James A. Eleckel, John D Melancon, John Doe 1-10, and the bystander officers who failed to intervene should be held jointly and severally liable for using excessive force on Mr. Diogu. So too should Fort Bend County be held liable for failing to train, supervise, and discipline its officers

in their use of excessive force and on matters relating to search and seizure as protected by the Fourth Amendment of the US Constitution.

## PARTIES

**PLAINTIFFS**

10. Plaintiff Diogu Kalu Diogu II., is a resident and private citizen of Fort Bend County, Texas in the State of Texas at all times material to this Complaint. He worked for NASA Johnson Space Center for 24 years and in the Space Center for 30 years. The property seized and destroyed by the defendants includes all documents he created at NASA for the past 30 years. **See resume, Ex. 1.**

11. Plaintiffs Diogu Kalu Diogu II., as next Kin of his minor Children DKKDIII and NMKD ("Diogu") are residents and private citizens of the State of Texas at all times material to this Complaint.

**DEFENDANTS**

12. **Defendant KP George**: Plaintiff is informed, believes, and thereupon alleges that Defendant **KP George**, ("Defendant George") was at all times material herein a policy maker and supervisor and acting under color of law within the course and scope of his employment and office as the Fort Bend County Judge ("Judge"). He is being sued individually and in his official capacity, as the county Judge of Fort Bend County, Texas, and may have served at 401 Jackson St., Richmond, Texas 77469

13. **Defendant Charles G Norvell**: Plaintiff is informed, believes, and thereupon alleges that Defendant **Charles G Norvell**, ("Defendant Norvel") was at all times material herein a policy maker and supervisor and acting under color of law within the course and scope of his employment and office as the **Fort Bend County** Constables Precinct 1, (Constable) He is being sued individually and in his official capacity. He is

7

a citizen and resident of Fort Bend County, Texas, and may be served with process at 22333 Grand Corner Dr, Katy, TX 77494, or wherever he can be found.

14. **Defendant James A. Eleckel:** Plaintiff is informed, believes, a nd thereupon alleges that Defendant **James A. Eleckel** ("Defendant Eleckel ") was at all times material herein acting under color of law within the course and scope of his employment and office as a law enforcement officer of the Fort Bend County Constables Precinct 1. He is being sued individually and in his official capacity. He is a citizen and resident of Fort Bend County, Texas, and may be served with process at 22333 Grand Corner Dr, Katy, TX 77494, or wherever he can be found.

15. **Defendant John D Melancon**: Plaintiff is informed, believes, a nd thereupon alleges that Defendant ***John D Melancon*** ("Defendant Melancon ") was at all times material herein acting under color of law within the course and scope of his employment and office as a law enforcement officer of the **Fort Bend County** Constables Precinct 1. He is being sued individually and in his official capacity. He is a citizen and resident of Fort Bend County, Texas, and may be served with process at 22333 Grand Corner Dr, Katy, TX 77494, or wherever he can be found.

16. **Defendants John/Jane Doe 1-10**: Plaintiff is informed, believes, a nd thereupon alleges that Defendants **John/Jane Doe 1-10** ("Defendants John Doe 1-10 ") was at all times material herein acting under color of law within the course and scope of his employment and office as a law enforcement officer of the **Fort Bend County** Constables Precinct 1. He is being sued individually and in his official capacity. He/she is a citizen and resident of Fort Bend County, Texas, and may be served with process at 22333 Grand Corner Dr, Katy, TX 77494, or wherever he can be found.

8

17. Plaintiff is informed, believes, and thereupon alleges that Defendant County of Fort Bend ("Defendant County") is a duly constituted governmental entity in the State of Texas, and is, or was, the employer of all individually named Defendants including, but not limited to, those who are sued in their individual and official capacities, as well as one, or all, of Defendants DOES 1 through 10.

18. The identities, capacities, and/or nature of involvement of Defendants Does 1 through 10 ("Doe Defendants") are presently unknown to Plaintiffs. Plaintiffs therefore sue such persons using "Does" as fictitiously named. Defendants. Plaintiff is informed, believes, and thereupon alleges that there is likely to be evidentiary support to prove that each Doe Defendant was involved in some manner and legally responsible for the acts, and omissions. And/or breaches of duty alleged below. Plaintiff will amend the Complaint to name the Doe Defendants upon learning their true identities and roles in the actions complained of herein.

19. All of the facts, acts, omissions, events, and circumstances herein mentioned and described occurred in the County of Fort Bend, State of Texas, and the corporate and/or entity Defendants, and each of them, are residents of the County of Fort Bend, State of Texas, and/or have their principal place of business in said County, State, and/or are doing business in said County and State.

20. Plaintiff is informed, believes, and thereupon alleges that all Defendants employed by Defendant County were, at all times relevant and material to this Complaint, acting within the course and scope of their employment duties for Defendant County, and under color of law.

21. Plaintiff is informed, believes, and thereupon alleges that each of the individual Defendants' acts were known to, discovered by, approved by, and ratified by Defendant County, by and through their policymakers, decision-makers, officials, officers, and/or supervisors, including Defendant Deputies, and applicable Doe Defendants.

22. Plaintiff is informed, believes, and thereupon alleges that all Defendants employed by Defendants, at all times relevant and material to this Complaint, were acting within the course and scope of their employment duties for Doe Defendants, under color of law.

23. Plaintiff is informed, believes, and thereupon alleges that each of the individual Defendants' acts was known to, discovered by, approved by, and ratified by Doe Defendants, by and through policymakers, decision-makers, and/or supervisors, including applicable Doe Defendants.

24. Plaintiff is informed, believes, and thereupon alleges that officials, supervisors, policymakers, and other individuals with the authority to set or modify County and/or departmental policy, *de Jure* or *de facto,* of Defendant County and/or Doe Defendants, participated in, approved of, ratified, and/or failed to prevent the acts by all Defendants and Doe Defendants of which Plaintiffs complain herein.

25. Plaintiff is informed, believes, and thereupon alleges that at all times herein mentioned, each of the Defendants-including officials, supervisors, watch commanders, and other policymakers from Defendant County and/or Doe Defendants and their agents was the agent, employee, or co-conspirator o one other, some, or all of their Co-Defendants.

26. Plaintiff is informed, believes, and thereupon alleges that each of the Defendants, acting individually and/or in concert with each other, engaged in a common plan to wrongfully deprive Plaintiff of his respective rights to privacy, freedom of expression, security: In person and effects, freedom from excessive force, freedom from unreasonable searches and seizures, and due process of law, among others described herein. All of the things done by each Defendant against Plaintiff, as mentioned in this entire Complaint, were done, partially if not entirely, because of Plaintiff's expressive conduct. In doing each and all of the things herein mentioned, or neglecting or intentionally failing to rectify said misconduct, each and all Defendants were acting pursuant to a *de facto* policy and within the scope of such agency, employment, and conspiracy and with full permission, knowledge, approval, ratification, and support of each other.

27.      **Defendant Southwest International Trucks, Inc.**, a Delaware corporation, doing business in Texas. Plaintiff is informed and believes, that Defendant Southwest International Trucks, Inc. was at all times in an agreement to provide the required service in furtherance to the defendant law enforcement officers under color of law within the course and scope of their employment and office as a law enforcement officer of the **Fort Bend County** Constables Precinct 1, to search and seize the plaintiff's real and personal property. He is being sued individually and may be served with process at CT Corp, 1999 Bryan St, Ste 900, Dallas, TX 75201.

### FACTUAL BACKGROUND

28. Plaintiff Diogu Kalu Diogu II, LL.M. is a resident of Fort Bend County, Texas. For years before the incident described in this complaint, Mr. Diogu suffered from a medical condition known as sciatica. Sciatica is a condition that involves nerve pain in the lower

back, hips, and legs. Before the incident described in this complaint, Mr. Diogu

managed his sciatica by doing home physical therapy, taking prescription medication,

and avoiding activities that involved bending over or lifting heavy objects.

## A. EXCESSIVE USE OF FORCE

### 1. MR. DIOGU KALU DIOGU II'S ARRESTED FOR AN UNRELATED REASON

29. On or about July 2nd, 2024, after the Plaintiff's vehicle had stopped at a stop sign

near the intersection of Hunts Road and FM 359 in Fort Bend County, Several Deputies

from Fort Bend County Constables Precinct 1, (collectively "the Deputies") rushed the

Plaintiff's vehicle with siren blazing and the lights flashing.

30. On or about July 2nd, 2024, the Deputy Defendants commanded the Plaintiff to

get out of his car, and he did. He followed every single command they gave him. He did

so because he is informed and believes, that in this country, white southern Officers, in

particular, like these deputies, use such incidents to shoot and kill and black man, lie

about it in court, and get a free pass. Defendant John D Melancon, John Does 1-10

detained Mr. Diogu without reasonable suspicion and probable cause but based on a

warrant claiming that Plaintiff made a Terrorist threat to a Governmental Agency. This

is not true because a few moments later when my family member at my residence asked

one of the deputies, whether the stopped the Plaintiff running the stop sign or speeding

for stopping the Plaintiff. The officer said no, we have a warrant for his arrest for

terroristic threat, then she asked why are you here. The deputy(s) responded by saying

that the arrest was a pretext for confiscating his house. They kicked my family, without

more and sieved my house with everything I owned and worked for my entire life in this

country.

## ¶2. THE ABUSIVE AND UNNECESSARY HANDCUFFING

31. While handcuffing and handling Mr. Diogu during his detention, the Deputies used excessive force and painfully contorted and applied pressure to his arms, shoulders, neck, and back, causing those areas of his body significant injury causing the Plaintiff to bleed on his elbow and his wrist.

32. Immediately upon being handcuffed behind the back, Mr. Diogu, in addition to bleeding felt severe pain radiating through his back and legs. This pain was caused by the twisted bodily position in which the behind-the-back handcuffing forced Mr. Diogu to sit in the back of the car in a very painful position which irritated and put increased pressure on his sciatic nerve.[7]

¶33. Mr. Diogu informed Defendant **John D Melancon** of the pain the abusive handcuffing was causing me and he simply ignored Diogu, until Defendant Deputy Doe, asked Defendant **John D Melancon** to loosen the handcuff. But that still left Diogu sitting awkwardly. The Defendant deputies, 1-10, could hear and see everything that was happening. They witnessed Defendant **John D Melancon** ignore Mr. Diogu's pleas and handcuff him behind his back, but they did not intervene to protect Mr. Diogu from Defendant John D Melancon's abusive handcuffing.

34. After handcuffing and arresting Mr. Diogu, Defendant John D Melancon directed Mr. Diogu to sit in his deputy's car while he chatted with Defendant Bystander Officers. Because Mr. Diogu was handcuffed behind the back, he was forced to sit in a bent-over position in the car—a position he would normally avoid because it compresses and

---

[7] See National Center for Biotechnology Information, "Sciatica", Feb. 26, 2021 (describing sciatica as a "Debilitating condition" that is "worsened with twisting" or "bending"), https://www.ncbi.nlm.nih.gov/books/NBK507908/; Becky Young and William Morrison, M.D., Everything You Need to Know About Sciatica, Healthline, Aug. 16, 2019, https://www.healthline.com/health/sciatica.

irritates the sciatic nerve. This seated positioning caused him further excruciating pain in his back, legs, arms, ribs, and shoulders. The pain was a direct and proximate result of his seated position and the behind-the-back handcuffing. In severe pain, Mr. Diogu was forced to wait in the deputy's car for roughly 20 minutes before Defendant John D Melancon finally got into the vehicle and drove to the Deputy's station.

### 3. MR. DIOGU SUFFERED INJURIES ARISING FROM THE HANDCUFFING

35. The excessive force to which Mr. Diogu was subjected while he cooperated with his arrest caused him long-term physical, psychological, and economic injuries. These injuries—which still affect Mr. Diogu many months after his arrest—were directly and proximately caused by Defendant John D Melancon's use of excessive force in handcuffing Mr. Diogu from behind the back rather than the front, even though Defendant John D Melancon was informed that doing so would cause Mr. Diogu injury due to his underlying medical condition.

36. For a week following his arrest, Mr. Diogu had purple bruises with the imprint of handcuffs on his wrists. Since his arrest, Mr. Diogu has suffered from dramatically increased nerve pain from his sciatica. This increased pain, itself injurious, has significantly limited Mr. Diogu's capacity to undertake daily activities. While before his arrest, he was able to engage in day-to-day activities, he is now unable to engage in housework, such as doing

37. Additionally, Mr. Diogu has experienced mental anguish, humiliation, emotional distress, loss of enjoyment of life, and other non-pecuniary losses since his arrest. The psychological impact of the abusive handcuffing he was subjected to led Mr. Diogu to

resume taking pain medication, which he had stopped taking several months before his arrest.

## 4. UNLAWFUL SEARCH, SEIZURE, AND DESTRUCTION OF THE PLAINTIFF'S PROPERTY

### I. WITHOUT AUTHORITY THE DEFENDANTS UNLAWFULLY SEARCHED AND SEIZURE DIOGU'S RESIDENCE LOCATED AT 4726 GAINSBOROUGH DRIVE, BROOKSHIRE, TEXAS 77423

38. After the Plaintiff was arrested on a trumped-up charge, and placed in the



Deputies car, the Plaintiff is of information and belief that deputies went straight to the Plaintiff's Residence, located at 4726 Gainsborough Drive, Brookshire, Texas 77423, kicked out his minor children, his sister, and nephew, and confiscated his Resident without a single Court Order to do so.

39. The Plaintiff's $1.5-million-dollar Resident was free and clear of any mortgage note and deed of Trust. As such was protected from seizure by creditors under both the Texas Constitution and relevant Texas property codes.

### II. CHATTEL - WITHOUT AUTHORITY THE DEFENDANTS SEARCHED, LOOTED, SEIZED, AND DESTROYED ALL THE PLAINTIFFS' EARTHLY POSSESSIONS AND DREAMS INCLUDING THOSE THAT MONEY COULDN'T BUY

40. Unbeknown to Diogu at the time, was that three or more of these deputies, without authority, had driven to his Resident, and confiscated and or destroyed all his over 30 year- NASA achievement awards, and memorabilia including one signed for him by ***President Ronald Reagan***, relating to his achievement as a few NASA scientist appointed under the Reagan administration's Ninety Days Study of the Lunar and Mars

exploration signed by **President Ronald Reagan**[8], a Memorabilia signed by **Astronaut John Young**[9], for his accomplishment in designing and developing the Descent design system (DDS) for the first four Space Transportation system, (Space Shuttle) flights in the history of mankind 1.5 million dollar Resident, home free and clear of any mortgage note and deed of Trust, Plaintiff is informed and belief as they got to Resident, the deputies kicked his 2 minor children out, took his 2 great pyrenes puppies to the Fort Bend Animal Shelter for slaughter, confiscated all his earthly belonging, some of which are priceless, if a dollar amount can be attached ranging from more than 500 million USD dollars, his children pre-K awards up to the 10th Grade, accomplishments, and awards, etc., and threw them in the streets.

41. Asking bystanders to take whatever they wanted while they knew that the owner of the house and that personal property had just been arrested by them, placed in their custody, helpless, and if he wanted, could not save his belongings.

42. The Defendants' conduct was a textbook definition of cruel and inhumane treatment. And there cannot be any other explanation other than that their conduct was fueled by race and national origin animus.

43. Additionally, to the seizure of Mr. Diogu's residence, Plaintiff is informed and believes that the deputies stole more than **USD 20,000.00** in cash and **30,000.00** in Thai bhats, jewelry, and other antiques that cannot be easily ascertained monetarily.

---

[8] https://www.washingtonpost.com/archive/politics/1988/01/16/reagan-clears-missions-to-mars-lunar-base/7364ecaa-d209-4c90-b8db-c97c9a030baf/

[9] John Young, who died in 2018 was an American astronaut, naval aviator, and engineer who is considered an American hero for his many accomplishments: Young was NASA's most experienced astronaut, serving for an unmatched 42 years with the space agency. He flew two Gemini missions, launched twice on Apollo missions to the moon, and commanded two space shuttle missions

These people emptied my house and threw away all my earthly belongings with authority.

### III.    PLAINTIFF HAS REQUESTED THE KEY OR BE ALLOWED ACCESS INTO HIS PROPERTY THROUGH THEIR AGENT NO AVAIL

44. Since July 26th, 2024, the plaintiff has requested the key to open the gate and access his property, but the Defendants and its agents have failed to do so.  Requiring the Plaintiffs to be essentially homeless, without their clothes or his other property, and have a forced entry may result in further arrest and more trumped-up charges.

### IV.    THE DEFENDANT'S CONDUCT SHOWED VENDETTA, WITH THE INTENDED PURPOSE BEING TO DEHUMANIZE THE PLAINTIFF AND HIS FAMILY

45. Your Honor, to imagine the enormity of the violation of Diogu's rights, close your eyes, and imagine everything you and your family have been seized, thrown away as trash, for anyone to take, in a community you have resided in for 10 years, Imagine that. These deputies did all these without a single court authorization, in America. I have nightmares, writing this even now.

46. There cannot be any other explanation other than that the defendant's conduct showed vendetta, with the intended purpose being to dehumanize the plaintiff and his family

### V.    THE GOVERNMENT DEFENDANTS CONSPIRED WITH SOUTHWEST INTERNATIONAL TRUCKS, INC. TO VIOLATE PLAINTIFF'S CIVIL RIGHTS.

47. The Plaintiff is of information and believes that government defendants, coordinated with Southwest International Trucks, Inc., aid and abet them in seizing destroying, and disposing of all of the plaintiff's earthly property, without an authority to do so.

17

48. Plaintiff is informed and believes that the Deputies, and defendant Southwest International Trucks, Inc. conspired and colluded with each Defendant, will load all Plaintiff's earthly belongings, and to the street empty them, and ask anyone to take them. ***See the video attached as USB.***

49. For over 3 days, the Constable kept 24-hour watch over the Resident, employed floodlights at night, and person guard for weeks.

50. The Plaintiff and his children cannot return home until this court issues an order, ordering the Constable to cease the harassment and threats of further arrest. **Exhibit 4.**

### VI.    PLAINTIFFS LOST EVERYTHING DUE TO THEFT BY THE DEFENDANTS, BYSTANDER AND LATER BY HURRICANE BERYL

51. Defendants dumped the Plaintiffs' property in the gutter knowing that Hurricane Beryl was in the forecast and the Plaintiff was in jail for some trumped-up charges.

52. Plaintiff is informed and believes that because the Defendants dumped his property in the gutter and ditches in front of his house, unattended, bystanders stole what they could, and whatever they did steal was destroyed by Hurricane Beryl. As a result.

53. The plaintiffs lost everything due to theft by the defendants, and bystanders, and what was stolen was later destroyed by Hurricane Beryl as a result of the unlawful search and seizure conducted without judicial authority by the defendants.

### 5.    RACISM AND NATIONAL ORIGIN ANIMUS WERE SOME OF THE MOTIVATING FACTS

54. In this instant case, in addition to the fact that the Plaintiff is black and the Deputies white, there cannot be another explanation that the gross inhumanity shown to

18

the Plaintiff, his minor children, and his property, was based on race. The plaintiff is further informed and believes that the conduct of the defendants towards the Plaintiff was motivated by race. As indicated above, the Plaintiff is Black.

55. In 1964, Supreme Court Justice Potter Stewart famously tried to explain "hard-core" pornography, or what is obscene, by saying, "I know it when I see it." When the court finally came up with a definition for what constitutes pornography a key part of that ruling said that obscenity could be determined by "whether the 'average person, applying contemporary community standards' would find that the conducts of the Defendant taken as whole, appeals to the racist stereotyping, In this case abject cruelty, the dehumanization, -like Haitians eating people's pets, we know the motivation, condensing manner to which they treated the Plaintiff's high property, like trash, had racial and national origin animus overtone, based on the history and the way the Black have been treated in the south.

56. For these search, seizure, and injuries, Mr. Diogu seeks money and equitable damages under 42 U.S.C. §§ 1983, 1985(3), and 1988 and the Fourth Amendment to the United States Constitution, and the laws of the State of Texas.

## DAMAGES

57. Each of the aforementioned acts by each Defendant directly and proximately caused Mr. Diogu to suffer the following: violation of civil rights, loss of freedom of expression, loss of enjoyment of freedom of expression, loss of privacy, loss of enjoyment of privacy, loss of personal liberty and freedom to physically move about, loss of enjoyment of personal liberty and freedom to physically move about, humiliation, emotional and physical injury, pain and suffering, and great and extreme mental anguish.

58. Mr. Diogu endures, and continues to endure, substantial pain and suffering due



to every act and omission of all Defendants, and each of them. The facts that Plaintiff will never again see his pioneering manuscript for the design and development of the Decent Design System for the Space Transportation system, Guidance Navigation and control,

59. (GN&C) the Maintainability and supportability concept for the 90-day study for the lunar and Mars program, signed memorabilia from John Young, all NASA awards, my kids' accomplishments, and achievement awards from pre-K to the 10th Grade, manuscripts and groundbreaking technology on the prediction and eradication of the zoonotic diseases etc. It meant nothing to the deputies; the Plaintiff is of information and belief these defendants were full of hate and with deep-rooted Racism and national origin animus. **Defendant James A. Eleckel**'s growling look, and his expressionless facial expression resembled those southern racist **KKK** and white supremacy types, who will lynch blacks to take their property as documented in congressional records. They got away then Mr. Eleckel[10], this time we have laws and transparency, and you will have your day in court because our laws will hold you accountable. You kicked Diogu's kids out of their house near midnight and now you are trying to deny them access to the school of their choice without a single authority over them to do so.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 – EXCESSIVE FORCE IN HANDCUFFING PLAINTIFF IN VIOLATION OF THE FOURTH AMENDMENT

[10] The plaintiff is closely associated with Tricia and Edward Kreneks, and the Plaintiff is informed and believe that the Kreneks are the masterminds in this conspiracy. The Plaintiffs reserve the right to amend this complaint in due time.

**(AS TO DEFENDANTS JOHN D MELANCON AND BYSTANDER OFFICERS)**

60. Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

61. Fourth Amendment Searches and Seizures:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall be issued, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

> 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

62. Defendants John D Melancon and Bystander Officers, jointly and severally, deprived Mr. Diogu of clearly established rights secured to him under the United States Constitution— specifically the Fourth Amendment rights to be free from unreasonable seizures and to be free from the use of excessive force against one's person.

63. Defendant John D Melancon's excessive use of force in handcuffing Mr. Diogu from the back rather than the front was unreasonable. Defendant John D Melancon was aware that Mr. Diogu suffered from a pre-existing medical condition that would cause him pain if he was handcuffed from the back rather than the front because he heard Mr. Diogu specifically tell him that. Despite this awareness, Defendant John D Melancon nonetheless handcuffed Mr. Diogu from behind the back. This application of force was disproportionate in the circumstances because Mr. Diogu posed no threat or danger to the arresting officer or anyone else, and did not resist arrest or attempt to flee.

21

## SECOND CLAIM FOR RELIEF
## VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)
## Fourteenth Amendment (Malicious Prosecution / Substantive Due Process)
## By Plaintiff Against the Deputies

64. Plaintiff incorporates all paragraphs, as though fully set forth herein.

65. This cause of action arises under 42 U.S.C. § 1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity secured by him by the Fourteenth Amendment to the United States Constitution

66. The Fourteenth Amendment guarantees Plaintiff substantive due process of law.

67. The complained acts of Defendants were shocking to the c onscience, beyond the bounds of acts tolerable in a civilized society, and so egregious and outrageous that they may fairly be said to shock the contemporary conscience.

68. The acts of Defendants were retaliatory, fraudulent, deliberate, and in contemplation of intimidating Mr. Diogu. The Deputies acted with malice and oppression. Mr. Diogu was detained, battered, arrested, jailed and his residence seized, his business which is source of living was also wiped out based upon a fabricated complaint brought by Michael Durrschmidt a person known in the legal community as a racist, compulsive, and pathological liar and a fraud.

## THIRD CLAIM FOR RELIEF
## VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)
## Fourth Amendment (Unlawful Seizure / Search / Excessive Force)
## By Plaintiff Against the Deputies

69. Plaintiff incorporates all paragraphs, as though fully set forth herein.

70. This cause of action arises under 42 U.S.C. § 1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity secured to him by the Fourth Amendment to the United States Constitution.

The Fourth Amendment protects Plaintiff from unreasonable search and seizure, including the use of excessive force.



### *Unlawful Seizure of Plaintiff's Resident*

**71.** The unlawful seizure, of the Plaintiff's Resident, home office business, and personal property by the Defendants was without lawful basis, reasonable suspicion, probable cause, or warrant, or any recognized exceptions thereto, or justification or excuse, and were thus unreasonable and in violation of Mr. Diogu's Fourth Amendment rights. **Exhibit 4.**

72. His Resident was also his home office through which he conducted much scientific research, all those proposals and trade secrets were wiped by the Deputy's offer when they had no warrant or authority to do so.

### *Unlawful Searches of his residence and home office*

73. The plaintiff maintains a home office in his garage upstairs, the Plaintiff is informed and believes that the Defendants went up there searched, stole, and confiscated everything and destroyed those they could not steal including high-end computers and word processing equipment, trade secrets, know-how, and proposals.

74. To put it mildly, what Plaintiff lost in this raid, cannot be recovered in the remaining life the Plaintiff has here on earth. The damages this defendant caused the plaintiff are unimaginable. An estimate of losses in the **$500,000,000.00**- is minimal.

75. The contemporaneous with his arrest was the unlawful searches of the Plaintiff's Resident were without lawful basis, reasonable suspicion, probable cause, warrant, or any recognized exceptions thereto, or justification or excuse, and were thus unreasonable and in violation of Mr. Diogu's Fourth Amendment rights.

### *Excessive Force*

76. The unlawful, unwanted, and harmful touching of Mr. Diogu by the Defendants, constituting batteries and excessive force, was without lawful basis, reasonable suspicion, probable cause, or warrant, or any recognized exceptions thereto, or justification or excuse, and was thus unreasonable and **in** violation of **Mr.** Diogu's Fourth Amendment rights

77. The unlawful, unwanted, painful, and harmful handcuffing and rough handling of Mr. Diogu by Defendants, also constituting a battery and excessive force, was without lawful basis, reasonable suspicion, probable cause, or any recognized exceptions thereto, or justification or excuse, and was thus unreasonable and in violation of Plaintiff's Fourth Amendment rights.

### FOURTH CLAIM FOR RELIEF
### VIOLATION OF CIVIL RIGHTS (42 U.S.C. §§ 1983, 1988)
### Conspiracy to Violate Civil Rights
### By Plaintiff Against the Deputies

78. Plaintiff incorporates all paragraphs, as though fully set forth herein.

79. This cause of action arises under 42 U.S.C. §§ 1983 and 1988, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity secured to them by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

80.     Defendants, and each of them, acted as described herein above, in conspiracy with, and with the agreement, permission, ratification, and approval of, each other to violate Mr. Diogu's civil rights afforded under the United States Constitution.

81. Among other things, the Deputies acted in conspiracy and with agreement, permission, ratification, and approval of their joint conduct to (1) unlawfully seize Mr. Diogu's Resident without probable cause or reasonable suspicion; (2) unlawfully search Mr. Diogu's residence without probable cause or reasonable suspicion, and (3) jointly act to use excessive force during the detention of Mr. Diogu.

## FIFTH CLAIM FOR RELIEF
### VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983) UNCONSTITUTIONAL POLICY, CUSTOM, OR PROCEDURE *(MONELL)* BY PLAINTIFF AGAINST DEFENDANT COUNTY

82. Plaintiff incorporates all paragraphs, as though fully set forth herein.

83. This cause of action arises under 42 U.S.C. § 1983, wherein Plaintiffs seek to redress a deprivation under color of law of a right, privilege, or immunity secured to them by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

84. Defendant County violated Mr. Diogu's constitutional rights, as alleged *supra₁* by creating and maintaining the following unconstitutional customs and practices, *inter alia:*

   a. Mr. Diogu alleges that Defendant County has a *de facto* policy, custom, or practice of inadequately investigating their Deputies officer employees upon complaints of misconduct or claims for Damages involving Deputies misconduct.

b. Mr. Diogu alleges that Defendant County has a *de facto* policy, custom, or practice of failing to discipline, failing to investigate, and retaining, personnel who falsely detain persons in violation of constitutional rights.

c. Mr. Diogu alleges that the defendant County has a *de facto* policy, custom, or practice of condoning, ratifying, failing to discipline, failing to investigate, and retaining, personnel who use excessive and/or unjustified force upon persons with whom they come into contact in violation of constitutional rights. Defendant County's policies or customs caused and were the moving force and/or affirmative link behind some or all of the violations of Mr. Diogu's constitutional rights at issue in this case.

85. Mr. Diogu is informed, believes, and thereupon alleges that these policies, practices, customs, and procedures are intentional and/or the result of deliberate indifference on the part of Defendant County, by and through its decision makers.

86. The foregoing unconstitutional customs and practices were a direct and legal cause of harm to Mr. Diogu.

87. Mr. Diogu specifically alleges that Defendant County's policy, custom, and/or practices, as described herein, were within the control of Defendant County and the feasibility of Defendant County, to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Mr. Diogu.

**SIXTH CLAIM FOR RELIEF**
**VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)**
**FAILURE TO TRAIN, SUPERVISE, DISCIPLINE, OR**
**CORRECT *(CITY OF CANTON)***
**(PLAINTIFF AGAINST DEFENDANTS' DEPUTIES AND COUNTY)**

88. Plaintiff incorporates all paragraphs, as though fully set forth herein.

89. This cause of action arises under 42 U.S.C. § 1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity

secured to them by the Fourth, and Fourteenth Amendments to the United States Constitution.

90. Deputies-Defendants violated Mr. Diogu's constitutional rights, as alleged *supra,* by creating and maintaining the following unconstitutional customs and practices, *inter alia:*

> a. Mr. Diogu is informed, believes, and thereupon alleges that Defendants Deputies and County have ample reason to know, based upon arrest reports, claims for damages, *inter alia,* that Fort Bend County Precinct 1 officers and/or employees regularly engage in the misdeeds set forth in this entire complaint.

> b. Mr. Diogu is informed, believes, and thereupon alleges that Defendants Deputies and County have failed to properly train, supervise, and/or discipline employees, officers, managers, and supervisors within the Fort Bend County Precinct 1, as the legal requirements and protections applicable to persons as set forth in the United States and Texas Constitutions, and other laws; and

> c. Mr. Diogu alleges that these failures amount to a *de facto* policy and are intentional and/or the result of deliberate indifference on the part of Defendants Deputies and County, by and through its decision makers. These include but are not limited to, Defendants -Fort Bend County and his subordinates, as necessary to further these improper policies, customs, and procedures.

91. The foregoing unconstitutional customs and practices were direct and legal causes of harm to Mr. Diogu.

92. Defendants KP George and Charles G Norvell, **(Collectively, Fort Bend County"),** acted in a supervisory capacity concerning the incidents involving Mr. Diogu. In that capacity, Defendants Deputies acted intentionally, maliciously, in conscious disregard, and/or with deliberate indifference to the rights of Mr. Diogu. Mr. Diogu is informed, believes, and thereupon alleges that Defendants -Fort Bend County acted in this manner, at least in part, to avoid liability and financial

exposure for the Fort Bend County Precinct 1 and to maintain his reputation and the reputation of the Fort Bend County Precinct 1.

93.    These supervisory failures of Defendants -Fort Bend County directly caused and contributed to Plaintiffs damages.

94.    Plaintiff specifically alleges that **Defendants - Fort Bend County** and County's policy, custom, and practice, as described *supra,* was within each of their control, and within the feasibility of each of them, to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiffs.

## SEVENTH CLAIM OF
## PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF AGAINST ALL DEFENDANTS

95.    The above paragraphs are incorporated herein.

96. In addition, Plaintiff asks this Court to enjoin Defendant Jones from enforcing the illegal, unconstitutional, Orders against Plaintiff.

97. Plaintiff sues Government Defendants in their official capacities and others in their capacity in his request for Defendants to be enjoined from enforcing the illegal unconstitutional Orders issued by Jones against Plaintiff.

## EIGHTH CLAIM OF RELIEF
## PLAINTIFF'S REQUEST FOR DECLARATORY RELIEF AGAINST ALL DEFENDANTS

98. The above paragraphs are incorporated herein.

99. In addition to Plaintiff's request for an injunction against Defendants Jones, Plaintiff asks this Court pursuant to FRCP Rule 57 and 28 U.S.C. §2201 to issue a

Declaratory Judgment stating that the defendants' actions violate Plaintiff's

Constitutional rights.

100.    Plaintiff sues Defendants in their official capacity in his request for a

Declaratory Judgment against Defendants.

101.    The plaintiff demands a trial by jury for all issues so triable.

## NATURE OF ALL DEFENDANTS' ACTIONS

102.    Defendants acted maliciously and oppressively in violating Mr. Diogu

and his minor Children's established rights under United States and Texas law by

threats: intimidation, and/or coercion. As a result of Defendants' unlawful conduct

as alleged herein, Mr. Diogu has suffered and will continue to suffer, the above-

stated damages in an amount exceeding **$500,000,000.00** US dollars. According to

proof, including attorney fees and costs, to remedy the unlawful conduct.

103.    The Plaintiffs reserve the right to amend this complaint to add and

clarify what and who John/Jane does,

## PRAYER FOR RELIEF

**WHEREFORE,** Mr. Gray prays for the following relief from Defendants, and each of

them, for each of the above causes of action:

1. An order finding Defendants violated Plaintiff's established constitutional rights
   to due process and equal protection of the laws

2. Enter a Judgment around the Plaintiff's Injunctive Remedy

3. For compensatory damages, including general and special damages, according to
   proof.

4. For punitive damages under 42 U.S.C. §1983 and Tex. Civ. Prac. & Rem. Code § 41.001 and any other applicable laws or statutes, in an amount sufficient to deter and make an example of each non-governmental entity Defendant.

5. For statutory damages, according to proof.

6. For prejudgment interest according to proof.

7. For reasonable attorney fees under 42 U.S.C. §§ 1983, 1985(3), 1988 and any Relevant Texas Law,

8. For costs of suit; and

9. For such further relief which is just and proper

Respectfully submitted,

/s/    _Diogu Kalu Diogu II, LL.M._
Diogu Kalu Diogu II, LL.M.
4726 Gainsborough Drive
Brookshire, Texas 77423
Phone (713) 791 3225/Fax: (832) 408-7611
Diogu.diogu.law.firm@gmail.com

## VERIFICATION

I, Diogu Kalu Diogu II., L.L.M., declare I am the Plaintiff in this case. I verify that the foregoing instrument and or pleading was duly prepared by me, that the facts stated therein have been assembled by me, and that the allegations and statement therein are true and correct to the best of my knowledge, information, and belief. I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed in Brookshire, Fort Bend County, Texas 77423 on 10/07/2024

/s/_____

30