United States District Court
Southern District of Texas
**ENTERED**
May 02, 2025
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

Diogu Kalu Diogu II, LLM., et al. §
    *Plaintiffs,* §
     §
v. §        Civil Action 4:24-cv-3590
     §
Honorable KP George, Charles §
G. Norvell, James A. Eleckel, §
John D. Melancon, John/Jane §
Does 1-20, §
    *Defendants.* §

### MEMORANDUM AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. 636(b)(1). Pending before the court are Defendant Charles G. Norvell's (Norvell) Motion to Dismiss, ECF No. 20; Diogu Kalu Diogu II's (Diogu) Request for Entry of Default against Defendants Honorable KP George, James A. Eleckel, John D. Melancon, and John/Jane Does 1-10, ECF No. 29; Defendants James A. Eleckel and John D. Melancon's Motion to Dismiss, ECF No. 31; Defendant Honorable KP George's Motion to Dismiss, ECF No. 33; Diogu's Motion for Leave to File A Second Amended Complaint, ECF No. 34; and Diogu's Motion to Disqualify Defendants' Attorneys, ECF No. 35.

The undersigned recommends that Norvell's Motion to Dismiss, ECF No. 20, be **GRANTED** and that Diogu's claims against Norvell be **DISMISSED** with prejudice; that Eleckel and Melancon's Motion to Dismiss, ECF No. 31, be **GRANTED** and that Diogu's claims against Eleckel and Melancon be **DISMISSED** without prejudice; that KP George and Fort Bend County's Motion to Dismiss, ECF No. 33, be **GRANTED** and that Diogu's claims

against KP George and Fort Bend County be **DISMISSED** with prejudice.

The request for entry of default, ECF No. 29 is **DENIED**. The Clerk is **ORDERED** to refrain from entering default against any defendant in this case. Diogu's Motion for Leave to File a Second Amended Complaint, ECF No. 34, and Diogu's Motion to Disqualify Defendant's Attorneys, ECF No. 35, are **DENIED**.

## *1. Background*

### *A. Factual Background*

Diogu filed this suit against Defendants to complain about two incidents that allegedly occurred on July 2, 2024.

First, Diogu alleges that while driving toward a stop sign, he was accosted by Fort Bend County law enforcement officers. ECF No. 17 at 2. Defendants John D. Melancon, James A. Eleckel, and unknown Defendants John Does 1-10, are Fort Bend County Precinct 1 Deputy Constables and were among those alleged to have stopped Diogu. *Id.* at 5. Diogu alleges that, though he followed all the deputies' commands, they nonetheless assaulted and handcuffed him. *Id.* Diogu alleges that he informed the deputies that he suffered from chronic sciatica and asked them to handcuff him from the front rather than the back to avoid exacerbating his condition. The deputies allegedly ignored Diogu's request and handcuffed him while his hands were placed behind his back. *Id.* at 2-3. Diogu states that, because of the way he was handcuffed, he began to bleed profusely from his elbow and wrist and suffered extensive injuries that left him in "persistent debilitating pain," which prevented him from engaging in basic household chores. *Id.* at 3, 14. Diogu alleges that he informed Defendant Melancon of the pain he suffered but he was ignored until Defendant "Deputy Doe" asked Defendant Melancon to loosen the handcuffs. *Id.* at 13.

Second, Diogu alleges that, after the deputies arrested him, they went to his property and forced his children, sister, and nephew out of the house and to the street without a court order. *Id*. at 15. Diogu states that his property was free and clear of any mortgage note or deed and therefore could not be seized. *Id*. Diogu alleges that the defendants conspired with Southwest International Trucks, a private company, to seize and destroy the personal property contained within his house. *Id*. at 17. Diogu alleges that deputies confiscated or destroyed NASA memorabilia, cash, and other items, worth more than $500,000,000. *Id*. at 16. Diogu believes that any property that officers failed to confiscate themselves was likely destroyed by Hurricane Beryl or stolen by bystanders when the deputies dumped his personal property outside. *Id*. at 18. Diogu also alleges that deputies took his two Great Pyrenees puppies to the Fort Bend Animal Shelter for slaughter. *Id*. Diogu alleges that the "Constable" (Norvell) has for weeks kept a 24-hour watch over the residence, using floodlights at night, and a guard, to prevent Diogu and his children from entering the property. *Id*. at 18.

### B. Procedural Posture

On September 24, 2024, Diogu sued Defendants for their involvement in the two incidents. ECF No. 1. That same day, Diogu amended his complaint to properly name the Plaintiffs. ECF No. 3. Three days later, on September 27, 2024, Diogu amended his complaint a third time. ECF No. 6. Diogu then filed a document titled "Second Amended Complaint," the operative pleading, on October 7, 2024. ECF No. 17.[1]

In the Second Amended Complaint, Diogu seeks to bring eight claims against Defendants. First, Diogu brings claims under

---

[1] What Diogu refers to as the "Second Amended Complaint" is really his third amendment. The court uses the title Diogu gave the document to avoid confusion.

42 U.S.C. 1983 for the following: excessive force in handcuffing in violation of the Fourth Amendment (Count 1); malicious prosecution and violation of substantive due process in violation of the Fourteenth Amendment (Count 2); unlawful search, seizure, and excessive force in violation of the Fourth Amendment (Count 3); conspiracy to violate civil rights (Count 4); a *Monell* claim against Fort Bend County for an unconstitutional policy, custom, or practice (Count 5); and a failure to train, supervise, discipline, or correct claim against Defendant Deputies and Fort Bend County (Count 6). Diogu also requests injunctive relief (Count 7) and declaratory relief (Count 8). *Id*. at 29. Diogu requests, as damages, an amount exceeding $500,000,000. *Id*. Diogu also requests punitive damages. *Id*. at 30.

On October 15, 2024, Norvell filed a motion to dismiss the Second Amended Complaint, arguing that he is shielded by qualified immunity and that there is no colorable *Monell* claim against him because he is not a final policy maker. ECF No. 20. Diogu responds that Norvell is a final policy maker for Fort Bend County Precinct 1 and that Norvell's recitation of the law is incorrect. ECF No. 25.

On November 19, 2024, Diogu requested entry of default against Defendants Eleckel, KP George, John/Jane Does 1-10, and Melancon for failure to answer or otherwise defend. ECF No. 29. On November 26, 2024, Defendants Eleckel and Melancon filed a motion to dismiss Diogu's complaint for insufficient service of process under Federal Rule of Civil Procedure 12(b)(4) and (5). ECF No. 31. On December 3, 2024, KP George filed a motion to dismiss Diogu's complaint for insufficient service of process in violation of Federal Rules of Civil Procedure 12(b)(4)–(5) and for failure to state a claim in violation of Federal Rule of Civil Procedure 12(b)(6). ECF No. 33.

On November 26, 2024, Diogu and Southwest International Trucks agreed that the latter should be dismissed. ECF No. 30. Southwest International was dismissed the same day. ECF No. 32.

On December 17, 2024, Diogu filed two motions—one for leave to file an amended complaint and another to disqualify Defendants' lawyers. ECF No. 34; ECF No. 35. In his proposed amended complaint, Diogu seeks to add several state law claims, including false arrest, abuse of process, malicious prosecution, intentional infliction of emotional distress, trespass, theft and conversion, intrusion on seclusion, assault, battery, civil conspiracy to violate Texas law, false imprisonment, and unreasonable search and seizure. ECF No. 34-2. Diogu also proposes to add several federal law claims, including false arrest, malicious prosecution, fabricated evidence, and retaliation. *Id*. In his motion to disqualify Defendants' attorneys, Diogu argues that their presence in this case presents irreconcilable conflicts of interest. ECF No. 35. Defendants have jointly responded to each motion and urge the court not to grant either request. ECF No. 39.

### 2. *Motions to Dismiss*

#### A. *Legal Standard*

Federal Rule of Civil Procedure 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Generally, the court is constrained to the "four corners of the complaint" to determine whether the plaintiff has stated a claim. *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011); *see also Loofbourrow v. Comm'r*, 208 F. Supp. 2d 698, 708 (S.D. Tex. 2002) ("[T]he court may not look beyond the four corners of the plaintiff's pleadings.").

"The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff," and "drawing all reasonable inferences in that party's favor." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). The pleading

rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014); see *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) ("[A] complaint need not pin plaintiff's claim for relief to a precise legal theory.").

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Only statements of fact are to be taken as true. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Conclusory allegations are "disentitled . . . to the presumption of truth." *Iqbal*, 566 U.S. at 681. Thus, the court, in reviewing the plaintiff's complaint, may neither "accept conclusory allegations" nor "strain to find inferences favorable to the plaintiffs." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004). While "pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers," conclusory allegations will not suffice to prevent a motion to dismiss regardless of whether the plaintiff is proceeding pro se or is represented by counsel. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

### B. Analysis

#### i. ECF No. 20: Constable Norvell's Motion to Dismiss

Norvell moves for dismissal of the individual and official capacity claims against him. He argues that the individual capacity claims fail because qualified immunity shields him from any liability. ECF No. 20 at 13. He also argues that the official

6

capacity claims against him fail because Diogu does not state plausible *Monell*, failure to train, or failure to discipline claims against him. Norvell additionally argues that Diogu's official capacity claims against him are redundant, that the Fort Bend County Constable Precinct One cannot be sued, and that punitive damages are unavailable against him. Diogu responds that Norvell is a final policymaker for Ford Bend County Precinct 1, and that Norvell can be sued in his individual and official capacities. ECF No. 25 at 4-5.

The individual capacity claims against Norvell should be dismissed. A supervisory official may be held liable under § 1983 only if he personally participated in the acts that caused the constitutional deprivation, or if he implements unconstitutional policies that causally result in the constitutional injury. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). Diogu did not allege any facts establishing that Norvell was personally involved in his arrest or the seizure of his property. The only factual allegation that could possibly be interpreted to relate to Norvell's personal involvement is that "the Constable kept 24 hour-watch over the Resident [sic], employed floodlights at night, and person [sic] guard for weeks." ECF No. 17 at 18. This allegation does not pertain to the arrest of Diogu or the seizure of the property. Diogu does not explain how Norvell violated his constitutional rights by instituting surveillance on a residence. It is also not at all clear that such surveillance was ordered by Norvell or that Norvell was involved in the surveillance personally. It is entirely implausible that Norvell, the Constable himself, was standing a 24-hour watch and operating floodlights.

Further, Diogu includes a conclusory allegation that Norvell was "at all times material herein a policymaker and supervisor and acting under color of law with the course and scope of his employment and office as the Fort Bend County Constables

Precinct 1." ECF No. 17 at 7. These allegations are not sufficient to establish that Norvell was personally involved in the complained-of incidents. Nor does it establish with any specificity what Norvell did to order or implement policies resulting in any constitutional violation. As such, the individual capacity claims against Norvell should be dismissed.

The official capacity claims against Norvell should also be dismissed because they are duplicative. The Supreme Court has established that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Moss v. Harris Cty.*, No. CV H-14-2180, 2016 WL 9049981, *2 (S.D. Tex. Jan. 13, 2016). Federal district courts in Texas have "uniformly held official-capacity claims should be dismissed as duplicative and redundant where the government entity for which the individual serves is also named as a defendant." *League of United Latin American Citizens v. Texas*, 2015 WL 3464082, *2 (W.D. Tex. May 29, 2015). That is, the official capacity claims against Norvell are really claims against the county.

Diogu has named Fort Bend County Judge KP George as a defendant in his official capacity. ECF No. 17 at 7. Those claims, in turn, are actually claims against the county. As such, the official capacity claims against Norvell ought to be dismissed because they are duplicative of the claims against KP George.

To the extent that Diogu asserts claims against Norvell's office—the Fort Bend County Constable Precinct 1—those should also be dismissed. Federal Rule of Civil Procedure 17(b)(3) provides that the law of the state in which a federal court sits determines a party's ability to sue and be sued. Fed. R. Civ. P. 17(b)(3). Under Texas law, constables, sheriffs, and police departments cannot be sued unless the county grants the agency

"jural authority." *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991). Diogu has provided no evidence or argument that Fort Bend County has granted the Fort Bend County Constable Precinct 1 jural authority, and those claims should therefore be dismissed. *See, e.g.*, *Ramos v. Lucio*, No. CV B-08-122, 2008 WL 11503546, \*2 (S.D. Tex. Sept. 24, 2008) ("Plaintiffs have not alleged facts showing that Defendant Precinct 6 Constable's Office has been established as a separate legal entity . . . Consequently, Precinct 6 Constable's Office should be dismissed for lack of jural capacity.").

Because Diogu does not provide factual allegations establishing that Norvell was personally involved in the arrest and seizure of the property, the undersigned recommends that the individual capacity claims against Norvell be **DISMISSED** with prejudice. Because the official capacity claims against Norvell are duplicative of the claims against KP George and Fort Bend County, the undersigned recommends that the official capacity claims against Norvell be **DISMISSED** with prejudice. To the extent that Diogu brings claims against Fort Bend County Constable Precinct 1, the undersigned recommends that those claims be **DISMISSED** with prejudice because that entity has not been conferred with jural authority.

### ii. ECF Nos. 29 and 31: Diogu's Request for Entry of Default and Defendants' James A. Eleckel and John D. Melancon's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(4) and 12(b)(5).

Diogu requests entry of default against Defendants KP George, Eleckel, Melancon, and John/Jane Doe 1-10 for failure to answer or defend. ECF No. 29. Eleckel and Melancon move to dismiss Diogu's claims against them for insufficient service under

Federal Rule of Civil Procedure 12(b)(4) and (5). ECF No. 31. Diogu has not responded to that motion.

Diogu attaches to his request for entry of default a declaration explaining how he served process on the Defendants. ECF No. 29 at 3. He states that on September 29, 2024, copies of the summons and his original complaint were personally served on the Defendants as required under Texas Rule of Civil Procedure 106(a)(2). *Id*. at 4. He states that on or about October 11, 2024, the attorneys for Defendants KP George, Norvell, Eleckel, and Melancon, acknowledged receipt of the summons and complaint. *Id*. He added that the Defendants stated that they would appear to file a motion to dismiss the claims against them. *Id*. Eleckel and Melancon do not contest these allegations but add that Diogu's attempted service is invalid under Texas law because it was not served by the Clerk of the Court. ECF No. 31 at 3.

Federal Rule of Civil Procedure 55(a) allows entry of default against a party who has failed to plead or otherwise defend. Fed. R. Civ. P. 55(a). But under Rule 12(a)(1)(A)(i), the defendant's time to answer is triggered by service of the summons and complaint. *Id*. at 12(a)(1)(A)(i). Federal Rule of Civil Procedure 12(b) allows a party to assert by motion a defense of insufficient process or insufficient service of process. *Id*. at 12(b)(4)—(5). Federal Rule of Civil Procedure 4(e) provides that "an individual . . . may be served in a judicial district of the United States by (1) following state law for serving summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" *Id*. at 4(e). A district court has broad discretion to dismiss an action for insufficient service of process. *Perez v. City of New Orleans*, 173 F. Supp. 3d 337, 345 (E.D. La. 2016) (citing *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 645 (5th Cir. 1994)).

Texas Rule of Civil Procedure 106(a)(2), which Diogu cites, provides that a citation must be "served by mailing to the defendant by registered or certified mail, return receipt requested, a copy of the citation and of the petition." Tex. R. Civ. P. 106(a)(2). But the Texas Rules of Civil Procedure also provides that "service by registered or certified mail . . . must, if requested, be made by the clerk of the court in which the case is pending." Tex. R. Civ. P. 103. This rule also prohibits a person who is a party to a suit, or interested in a suit's outcome, from serving process. *Id*. Additionally, Texas Rule of Civil Procedure 107(c) provides that "when the citation was served by registered or certified mail as authorized by Rule 106 the return by the officer or authorized person must also contain the return receipt with the addressee's signature." Tex. R. Civ. P. 107(c).

Diogu has attached the summonses for each of the Defendants he is requesting default judgment against: Eleckel, Melancon, KP George, and Norvell. ECF No. 29 at 8-9. The summonses do not include any indication that service was made by the clerk of court or that service was made by certified mail. *Id*. at 8-9. On the summonses for Eleckel and Melancon, there is no signature from the clerk of court on either suggesting that the clerk of court effected service of process. *Id*. Diogu does not state in his declaration that the clerk of court effected service of process for the Defendants. *Id*. at 3-5. Additionally, for each of the Defendants that Diogu requests a default judgment against, Diogu's return of service does not contain a return receipt with the Defendants' addresses as is required by Texas Rule of Civil Procedure 107(c).

Diogu has not demonstrated that Eleckel, Melancon, and KP George have been properly served, so the clerk is **ORDERED** to refrain from entry of default. Eleckel, Melancon, and KP George have pointed out the service deficiencies and have argued that they

were prejudiced by the insufficient service, but Diogu has not responded or otherwise cured any of the problems. For the reasons provided, the undersigned recommends that that Eleckel and Melancon's Motion to Dismiss be **GRANTED** and that Diogu's claims against them be **DISMISSED** without prejudice.

### iii. ECF No. 33: Honorable KP George and Fort Bend County's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(4), 12(b)(5) and 12(b)(6)

Defendant KP George and Fort Bend County move to dismiss Diogu's complaint against him for insufficient process and service of process under Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5). ECF No. 33. They also move to dismiss the complaint because Diogu failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Id*. KP George argues that he is shielded by qualified immunity, that he was not personally involved in the conduct, and that there are no plausible *Monell*, failure to train, or failure to discipline claims. *Id*. at 13-24. KP George also argues that the claims against him are duplicative of the claims against Fort Bend County, that punitive damages are unavailable against him, and that there can be no declaratory relief. *Id*. at 24-25. Diogu has not responded.

As stated, Diogu's service of process was insufficient as to KP George. Diogu has provided no indication that the clerk of court effectuated service by certified mail. Diogu has not cured any of the problems with his service of process. The undersigned recommends that KP George's Motion to Dismiss based on Federal Rule of Civil Procedure 12(b)(4) and 12(b)(5) be **GRANTED**.

Even if service of process as to KP George was sufficient, Diogu has failed to state a claim upon which relief could be granted. Specifically, Diogu has not alleged facts establishing that KP George was personally involved in any of the alleged

unconstitutional conduct. Nor has he alleged facts to establish plausible *Monell*, failure to train, or failure to discipline claims.

The individual capacity claims against KP George should be dismissed. A supervisory official may be held liable under § 1983 only if he personally participated in the acts that caused the constitutional deprivation, or if he implements unconstitutional policies that causally result in the constitutional injury. *Porter*, 659 F.3d at 446. Diogu did not allege any facts establishing that KP George was personally involved in his arrest or the seizure of his property. Diogu only states that KP George was "at all times material herein a policy maker and supervisor and acting under color of law within the course and scope of his employment and office as the Fort Bend County Judge[.]" ECF No. 17 at 7. These allegations are conclusory and do not establish KP George's personal involvement in the conduct.

The *Monell* claims against KP George and Fort Bend County should be dismissed. To state a plausible *Monell* claim, a plaintiff must allege facts to support a finding that a) an official policymaker with actual or constructive knowledge of the alleged constitutional violation acted on behalf of the municipality, b) that the alleged unconstitutional action constitutes a policy or custom, and c) that there was a violation of constitutional rights whose moving force was the policy or custom. *Brown v. Tarrant County*, 985 F.3d 489, 497 (5th Cir. 2021). Importantly, to survive a motion to dismiss a *Monell* claim, a plaintiff must plead facts showing that the defendant acted pursuant to a specific official policy promulgated or ratified by the legally authorized policymaker. *Groden v. City of Dallas, Texas*, 826 F.3d 280, 282 (5th Cir. 2016).

Diogu has not alleged any facts establishing that KP George acted pursuant to a specific policy or even that Fort Bend County had such a policy. Diogu only provides a conclusory allegation that KP George was "at all times material herein a policymaker and

supervisor and acting under color of law within the course and scope of his employment and office as the Fort Bend County Judge[.]" ECF No. 17 at 7. Diogu does not even allege any facts establishing the existence of a specific, official Fort Bend County policy. While a "persistent, widespread practice of city officials or employees . . . so common and well settled as to constitute a custom" can satisfy the policy or custom requirement, *see Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984), Diogu does not allege facts connecting KP George to any persistent or widespread practices of arresting persons or seizing their homes or allege facts demonstrating that such a persistent and widespread practice exists.

The failure to train, supervise, and discipline claims against KP George and Fort Bend County likewise should be dismissed. To state a plausible failure to train, supervise, or discipline claim, a plaintiff must allege facts to support a finding that the supervisor either failed to supervise, train, or discipline the subordinate official; a causal link exists between the failure to train, supervise, or discipline and the violation of the plaintiff's rights; and that the failure to train, supervise, or discipline amounts to deliberate indifference. *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008); *see also Deville v. Marcantel*, 567 F.3d 156, 171 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 580 (5th Cir. 2001)). A plaintiff cannot rely on conclusory allegations to support such claims. *Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015).

Diogu provides only conclusory allegations. Diogu states that Fort Bend County "should be held accountable for its failure to train and supervise [the officers] concerning a procedure as routine and frequent as the arrest of a person with a medical condition in non-exigent circumstances[.]" ECF No. 17 at 4. Diogu goes on to state that the failure to train and supervise is "no wonder, given the County's track record of failing to discipline its

14

officers when they use excessive force against Black men[.]" *Id*. Diogu also alleges that the County has failed to train, supervise, and discipline officers as required by the United States and Texas constitutions and that these failures amount to de facto policy. *Id*. at 27. These allegations are conclusory, and Diogu does not point to any facts suggesting that there are deficiencies with the training, supervision, or discipline of Fort Bend County officers.

For the foregoing reasons, the undersigned recommends that the individual capacity claims against KP George be **DISMISSED** with prejudice. The undersigned recommends that the official capacity claims against KP George and Fort Bend County be **DISMISSED** with prejudice. The undersigned recommends that the *Monell*, failure to train, failure to supervise, and failure to discipline claims against KP George and Fort Bend County be **DISMISSED** with prejudice.

### iv. *Sua Sponte Dismissal of Claims Against John/Jane Doe Defendants*

The undersigned has recommended that all claims against all named defendants be dismissed. That leaves the claims against unknown John or Jane Doe Defendants. The Fifth Circuit has held that where "a defending party establishes that plaintiff has no cause of action . . . this defense generally inures also to the benefit of a defaulting defendant." *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (citing *United States v. Peerless Ins. Co.*, 374 F.2d 942, 945 (4th Cir. 1967)). The court has held that it would be "incongruous" and "unfair" to allow some defendants to prevail while not providing the same benefits to similarly situated defendants. *Id*.

The unnamed John/Jane Defendants are similarly situated to the named Defendants who have had the claims against them dismissed. Diogu has not stated a cause of action against any of the John/Jane Doe Defendants for the reasons described above

with respect to the named Defendants. Specifically, Diogu's allegations are conclusory and do not provide enough factual detail to avoid dismissal under Federal Rule of Civil Procedure 12(b)(6). The undersigned recommends that the claims against unnamed John or Jane Doe Defendants be **DISMISSED** with prejudice.

### 3. *Motion for Leave to Amend*

#### A. *Legal Standards*

Under Federal Rule of Civil Procedure 15(a), courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Though that's a generous standard, 'leave to amend can be properly denied where there is a valid justification.'" *Robertson v. Intratek Comput., Inc.*, 976 F.3d 575, 584 (5th Cir. 2020) (quoting *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006)). Valid justifications include undue delay, bad faith, dilatory motive, and whether the facts underlying the amended complaint were known to the party when the original complaint was filed. *Id.* (quoting *Southmark Corp. v. Schulte Roth & Zabel* (*In re Southmark Corp.*), 88 F.3d 311, 316 (5th Cir. 1996)). Courts may also consider a plaintiff's repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of the proposed amendment. *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (citing cases). An amended complaint is futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (citing cases). The analysis requires courts to apply "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (quoting cases). That standard has been set out above.

#### B. *Analysis*

At the outset, it should be emphasized that Diogu has already filed four complaints with this court. He filed his original

complaint and an amended complaint on September 24, 2024. ECF No. 1; ECF No. 3. Three days later, on September 27, 2024, he filed a second amended complaint. ECF No. 6. Finally, Diogu filed his third amended complaint on October 7, 2024. ECF No. 17. Diogu's current proposed amended complaint seeks to add as Defendants the Fort Bend County Attorney's Office and Firefighting's Finest; to add four federal law claims including First Amendment retaliation, false arrest, malicious prosecution, and fabrication of evidence; and twelve new state law claims. ECF No. 34-2. The court will not grant Diogu leave to amend his complaint. Diogu has had ample opportunity to add all relevant claims and correct the deficiencies with his prior complaints, continues to rely on conclusory allegations, and adds claims that the court should not exercise jurisdiction over.

### i. Federal Claims

The court will not grant Diogu leave to amend his complaint to add the false arrest, malicious prosecution, and fabrication of evidence claims because the facts underlying these federal claims were known to Diogu when he filed his prior complaints. *Robertson*, 976 F.3d at 584 (stating that a district court may consider "whether the facts underlying the amended complaint were known to the party when the original complaint was filed"). In his proposed amended complaint, Diogu claims that he was arrested without probable cause (False Arrest, Count 1); that the Defendants fabricated the evidence that he made a terroristic threat to a government officer (Fabricated Evidence, Count 4); and that the Defendants pressed charges against him while knowing they were baseless and lacked probable cause (Malicious Prosecution, Count 5). ECF No. 34-1 at 23, 25-26.

The facts underlying these claims were known to Diogu when he filed his original complaint. In his original complaint, Diogu provided the factual basis for these claims when he alleged

that he was "detained . . . based on a warrant claiming that Plaintiff made a Terrorist threat to a Governmental Agency. This is not true[.]" ECF No. 1 at 12. Diogu even included in his original complaint a substantive due process and malicious prosecution claim and stated, in support, that he was arrested, jailed, and had his property seized based upon a "fabricated complaint brought by [prosecuting attorney] a person known in the legal community as a racist, compulsive, and pathological liar and a fraud." *Id*. at 21. Diogu had alleged the facts that served as the basis for his proposed federal claims in his original complaint. He should have raised them in that prior filing.

Moreover, facts and documents referenced in the complaint suggest that these claims are futile. *See Funk v. Stryker Corp*., 631 F.3d 777, 783 (5th Cir. 2011) (stating that a district court must consider a complaint in its entirety, including documents incorporated into the complaint by reference). For example, in his second amended complaint, Diogu refers to the arrest warrant that claimed he made a terroristic threat. ECF No. 17 at 12. But Diogu's false arrest claim would be futile because he was arrested pursuant to a valid arrest warrant. ECF No. 39-1 at 40-57. *See Rykers v. Alford*, 832, 898 (5th Cir. 1987) ("This court has repeatedly held that a claim for false arrest or analogous torts is subject to dismissal for failure to state a claim when the arrest is made under a properly issued, facially valid warrant."). Diogu does not present facts to show that the warrant was invalid.

The court should also deny Diogu's motion for leave to amend his complaint to add the retaliation claim because doing so would be futile. Diogu's retaliation claim fails because he has not alleged facts to demonstrate that his speech was curtailed in response to engaging in constitutionally protected activity. *See Kennan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (holding that to state a plausible retaliation claim, a plaintiff must allege facts

that they were engaged in constitutionally protected activity, that the defendant's actions curtailed their speech, and that defendant's actions were substantially motivated against the plaintiff's exercise of the constitutionally protected activity). Diogu only includes conclusory allegations that Defendants' actions were intended to prevent him from engaging in protected speech and that they chilled his speech. ECF No. 34-2 at 39. He provides no additional information.

As a general matter, Diogu's proposed amended complaint suffers from the same deficiencies as his prior complaints. A district court can decline leave to amend if a plaintiff has previously amended their complaint. *See Herrmann Holdings Ltd. v Lucent Techs. Inc*., 302 F.3d 552, 556 (5th Cir. 2002) (denying plaintiff's motion for leave to amend because they had already twice amended their complaint). Diogu has amended his complaint three times. ECF No. 3; ECF No. 6; ECF No. 17. Each of the prior four attempts have been insufficient. Diogu has continually relied on conclusory allegations to support his claims, and he does so again in his proposed amended complaint. The instant motions to dismiss placed Diogu on notice of the problems with his pleadings. Given these repeated attempts to amend his complaint, and his failure to cure the deficiencies, the court concludes that Diogu is either unable or unwilling to amend his complaint in a way that would state a plausible cause of action. Diogu's motion for leave to add new federal claims is **DENIED**.

### ii. State Claims

Because leave to amend to add new federal claims is denied, leave to amend to add new state law claims is also denied. This is because the court should decline to exercise supplemental jurisdiction over Diogu's proposed state law claims given the absence of any viable federal claims. Under 28 U.S.C. §1367(c), a district court may decline to exercise supplemental jurisdiction

over a claim under 28 U.S.C. §1367(a) if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. §1367(c)(3). The "general practice" in this circuit is to not exercise supplemental jurisdiction over state law claims when the federal claims have been dismissed. *See Flood v. Educ. Credit Mgmt. Corp.*, No. 5:18-CV-119, 2019 WL 13256133, at \*4 (S.D. Tex. July 9, 2019) (citing *La Porte Cost. Co. v. Bayshore Nat. Bank of La Porte*, Texas, 805 F.2d 1254, 1257 (5th Cir. 1986). A district court could depart from this general practice if the court's "involvement with the state-law claims has [] been substantial[.]" *Id*.

The court's involvement with this case, and therefore with Diogu's state law claims, has not been substantial enough to justify departing from the general practice of declining to exercise supplemental jurisdiction over state law claims. Diogu filed this lawsuit in September 2024 and only moved to add these state law claims in December 2024. ECF No. 1; ECF No. 34. The court has not expended substantial judicial resources on these claims to justify exercising supplemental jurisdiction over them. *See, e.g.*, *Parker & Parsley Petroleum Co v. Dresser Indus.*, 972 F.2d 580, 587 (5th Cir. 1992) (holding that the district court abused its discretion by exercising supplemental jurisdiction over state law claims after dismissing all federal claims where the case had only been pending approximately nine months).

For the foregoing reasons, Diogu's motion to amend is **DENIED**.

### 4. *Diogu's Motion to Disqualify the Fort Bend County Attorney's Office, Bridgette Smith-Lawson, Rolf F. Krueger, Kenneth S. Cannata, and Kevin Hedges.*

Diogu moves for this court to disqualify Defendants' attorneys who are all employed by the Fort Bend County Attorney's Office. ECF No. 35. Diogu argues that there are

irreconcilable conflicts of interest between the Fort Bend County Attorney's Office, Fort Bend County, and Fort Bend County Precinct 1. *Id*. at 3. He also argues that the Fort Bend County Attorney's Office lawyers would improperly serve as both advocate for the County and witnesses. *Id*

Because the undersigned recommends that the claims against each Defendant be dismissed and that Diogu may not amend his complaint to add additional federal and state claims, Diogu's motion to disqualify is **DENIED** as MOOT.

### 5. *Conclusion*

The undersigned recommends that Norvell's Motion to Dismiss, ECF No. 20, be **GRANTED** and that Diogu's claims against Norvell be **DISMISSED** with prejudice; that Eleckel and Melancon's Motion to Dismiss, ECF No. 31, be **GRANTED**, and that Diogu's claims against Eleckel and Melancon be **DISMISSED** without prejudice; and that KP George and Fort Bend County's Motion to Dismiss, ECF No. 33, be **GRANTED**, and that Diogu's claims against KP George and Fort Bend County be **DISMISSED** with prejudice.

The clerk is **ORDERED** to refrain from entry of default. ECF No. 29. Diogu's Motion for Leave to File a Second Amended Complaint, ECF No. 34, and Diogu's Motion to Disqualify Defendant's Attorneys, ECF No. 35, are **DENIED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on May 2, 2025.

_____
Peter Bray
United States Magistrate Judge